Filed 6/15/15  Stuck in the Rough v. Swadley CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STUCK IN THE ROUGH, LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JERRY SWADLEY et al.,<br><br>    Defendants and Appellants. | D065166<br><br><br>(Super. Ct. No. 37-2013-00054876-CU-WM-NC) |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Lounsbery Ferguson Altona & Peak, Kenneth H. Lounsbery, Jacqueline S. Vinaccia; Niddrie, Fish & Addams and David A. Niddrie for Defendants and Appellants.

Manatt, Phelps & Phillips and Michael M. Berger for Plaintiff and Respondent.

Appellants Escondido Country Club Homeowners Organization, and its members Jerry Swadley, Betty Ferrell and Jack Hall (collectively, ECCHO) appeal from an order denying their special motion to strike under the under the anti-SLAPP statute (Code of

Civ. Proc., § 425.16).[1]  The special motion to strike was brought in a lawsuit filed by real estate developer Stuck in the Rough, LLC (the Developer) challenging the legality of an initiative petition circulated by ECCHO in the City of Escondido (City), which sought to stop the Developer from building homes on a defunct golf course.

As we will explain, we conclude that the trial court properly denied the special motion to strike, and we accordingly affirm the trial court's order.

I

FACTUAL AND PROCEDURAL BACKGROUND

In the 1960's a golf course, known as the Escondido Country Club, surrounded by residences, was built in the City.  The Developer acquired the golf course property in October 2012 by purchasing a note that was secured by a deed of trust on the golf course property and then foreclosing on the note.  The Developer concluded that it would not be profitable to continue to operate the golf course, and it therefore announced in February 2013 that it would close the golf course effective in April 2013.  The Developer announced that it planned to build homes on the land on which the golf course had been located.

In April 2013, ECCHO began circulating an initiative petition (the Initiative) in an attempt to stop the Developer from building houses on the golf course property.  The

_____

1      Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.  SLAPP is an acronym for strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 & fn. 1 (*Briggs*).)

2

Initiative, titled "Citizen's Property Rights Initiative," sought to amend the City's general plan to designate the golf course property as "Open Space-Park," which would permit the operation of a golf course on the property but not allow a housing development. The text of the Initiative cited a City planning commission resolution from the 1960's that ECCHO interpreted as expressing an intent that the golf course property would continue to be used as a golf course. Under the Elections Code, if ECCHO collected the required number of signatures, the City's options would be to place the Initiative on the ballot, order a report on the Initiative, or adopt the Initiative as a City ordinance. (Elec. Code, §§ 9214, 9215.)

In June 2013, while ECCHO was still collecting signatures for the Initiative, the Developer filed this lawsuit, consisting of a petition for writ of mandate and complaint against ECCHO; the City; and the City's clerk, Diane Halverson (the Complaint). The Complaint alleged that the Initiative was illegal and invalid because, among other things, it created inconsistencies with the City's general plan and zoning laws, it lacked an enacting clause, it improperly required the enactment of future legislation, and it impermissibly created " 'spot zoning.' " The Complaint contained three causes of action, only two of which were directed against ECCHO.

The first cause of action sought a petition for writ of mandate only against the City and Halverson based on the allegation that the Initiative was illegal. The Developer specifically sought an order directing the City and Halverson "*not* to certify the signatures on the Initiative or take any action to approve or place the Initiative on a ballot even if its proponents submit it with a facially sufficient number of signatures."

3

The second cause of action, directed only against ECCHO, sought a declaration concerning the parties' "respective rights and duties concerning the Initiative," and specifically declaring "that the Initiative is illegal such that no election should take place with regard to it."

The third cause of action, which named the City, Halverson and ECCHO as defendants, sought a declaration "that, if the Initiative is adopted, the City will owe [the Developer] just compensation for the taking of the [golf course property]." Unlike the first and second causes of action, the third cause of action did not seek an order preventing the Initiative from going forward.

On July 10, 2013, ECCHO delivered signatures on the Initiative to the City for certification. On July 23, 2013, the Developer filed an ex parte application for preliminary injunctive relief to prevent the City from placing the Initiative on the city council agenda and ordering that the Initiative be held in abeyance until the trial court could make a ruling on its validity. ECCHO filed an opposition, and on July 24, the trial court denied the ex parte application.

On August 12, 2013, ECCHO filed a special motion to strike under the anti-SLAPP statute. The special motion to strike was directed only against the first and third causes of action.[2] ECCHO specifically explained that it was not seeking an order striking the second cause of action because it recognized that the Developer "may have a

---

[2]    "A special motion to strike may be addressed to individual causes of action and need not be directed to the complaint as a whole." (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1387.)

4

right at some point to have its second cause of action challenging the validity of the [Initiative] heard and determined." However, ECCHO contended that the first and third causes of action were subject to a special motion to strike because they were purportedly aimed at discouraging ECCHO from exercising its constitutional right of petition.

The trial court denied the special motion to strike in November 2013. As to the first cause of action, the trial court concluded that ECCHO did not have standing to bring a special motion to strike, as it was not sued in that cause of action, which sought a petition for writ of mandate directed only at the City and Halverson. As to the third cause of action, the trial court concluded that ECCHO had met its burden on the first prong of the anti-SLAPP analysis to establish that the third cause of action arose from protected petitioning or free speech activity, but that the special motion to strike failed because the Developer had met its burden on the second prong of the anti-SLAPP analysis to establish a probability of prevailing on the claim.

Meanwhile, during the pendency of the special motion to strike, the City took action on the Initiative. Specifically, on August 14, 2013, the City reviewed and approved the Initiative and it became a City ordinance without the need to place it on the ballot for a vote of the electorate.

Due to the City's adoption of the Initiative as an ordinance, most of the relief that the Developer sought in the Complaint became moot, as the Complaint had sought a ruling preventing the City from taking action on the Initiative. Accordingly, at the hearing on the special motion to strike, the Developer stated that it would be filing a new lawsuit specifically challenging the City's enactment of the ordinance, which it later filed

5

and litigated, leaving the only issue in this case whether the anti-SLAPP motion was properly denied.[3]

ECCHO appeals from the order denying its special motion to strike, arguing that the motion should have been granted and it accordingly should have been awarded the attorney fees it incurred in defending against the challenged causes of action.

II

DISCUSSION

A.    *Overview of the Anti-SLAPP statute*

The anti-SLAPP statute provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

"The analysis of an anti-SLAPP motion thus involves two steps.  'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity.  (§ 425.16, subd. (b)(1).)  If the court finds

---

3    ECCHO has requested that we take judicial notice of the petition for writ of mandate/complaint filed in the Developer's second lawsuit, *Stuck in the Rough, LLC v. City of Escondido* (Super. Ct. San Diego, 2013, No. 37-2013-00074375-CU-WM-NC), in which only the City and its city council were named as respondents/defendants.  The Developer does not oppose the request for judicial notice to the extent that it is limited to showing the issues presented in that action.  We therefore grant the request to take judicial notice.

6

such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute — i.e., that arises from protected speech or petitioning *and* lacks even minimal merit — is a SLAPP, subject to being stricken under the statute.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820 (*Oasis West*).) " 'If the defendant does not demonstrate [the] initial prong, the court should deny the anti-SLAPP motion and need not address the second step.' " (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1476 (*Zucchet*).)

Section 425.16, subdivision (e) specifies the type of activity protected by the anti-SLAPP statute: An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Ibid*.)[4]

---

[4]     When the first two subparts of section 425.16, subdivision (e) are at issue (i.e., speech or petitioning before a legislative, executive, judicial or other official proceeding; or statements made in connection with an issue under review or consideration by an

7

" 'We review de novo a ruling on a special motion to strike under section 425.16. [Citation.] Thus, we apply our independent judgment, *both* to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim.' " (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 657, italics added (*South Sutter*).)

B.     *The Trial Court Properly Denied the Special Motion to Strike the First Cause of Action*

The first issue we consider is whether the trial court erred in denying the special motion to strike as to the first cause of action. As we have explained, the first cause of action sought a writ of mandate against the City and Halverson. Specifically, on the basis that the Initiative was purportedly illegal, the first cause of action requested that the trial court issue an order directing the City and Halverson to refrain from certifying the signatures on the Initiative or taking any action to approve the Initiative or place it on the ballot. Because ECCHO was not sued in the first cause of action, the trial court concluded that ECCHO lacked standing to bring an anti-SLAPP motion as to that cause of action. As we will explain, the trial court was correct.

As an initial matter, we note that there is no question that ECCHO had standing to appear on the first cause of action, either as a real party in interest or an intervener, in order to defend the Initiative that it backed. (*Perry v. Brown* (2011) 52 Cal.4th 1116 (*Perry*) [proponents of statewide initiative have standing to appear in a proceeding

---

official body), the moving party is not required to independently demonstrate that the matter is a " 'public issue' " within the statute's meaning. (*Briggs*, *supra*, 19 Cal.4th at p. 1113.)

8

against public officials that challenges the validity of the initiative in order to defend it, even if they are not sued].) Indeed, ECCHO participated without objection in opposing the Developer's application for preliminary injunctive relief to prevent the City from taking further action on the Initiative until its legality was decided.

Based on its undisputed standing to participate in the litigation of the first cause of action, ECCHO argues that because it has "standing to oppose Developer's first cause of action" it "follows therefore that [ECCHO] also ha[s] standing to invoke the anti-SLAPP statute to protect [its] interests in the initiative process." The argument is flawed. As we will explain, a party's standing to participate in defending against a cause of action challenging the validity of an initiative when the party is not sued in that cause of action is a different issue from whether that party is statutorily authorized to bring a special motion to strike that cause of action under the anti-SLAPP statute.

The scope of the anti-SLAPP statute is defined by its specific provisions. According to section 425.16, subdivision (b)(1), a special motion to strike may be brought in response to "[a] cause of action *against a person* arising from any act *of that person* in furtherance of the person's right of petition or free speech . . . ." (*Ibid.*) As our Supreme Court has explained, "[T]he statutory phrase 'cause of action . . . arising from' means simply that *the defendant's act* underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance *of the defendant's* right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, some italics added (*Cotati*).) Here, because

9

ECCHO was not sued in the first cause of action, it may not bring a special motion to strike as to that cause of action.[5]

We find the decision in *Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375 (*Garamendi*) to be persuasive here.  In *Garamendi*, a public interest group filed a petition for writ of mandate and complaint against the Insurance Commissioner to invalidate legislation regulating insurance companies.  Although the complaint did not sue Mercury Insurance Group (Mercury) or seek any relief against it, the complaint alleged that the challenged legislation was "insurer-sponsored" and that Mercury made significant monetary contributions to lawmakers in support of the legislation.  (*Id.* at p. 1380.)  Mercury was permitted to intervene in the action, and it then filed a special motion to strike under the anti-SLAPP statute.  The trial court in *Garamendi* denied the motion, concluding among other things, that Mercury did not have standing to bring an anti-SLAPP motion because it was not named as a defendant.  (*Id*. at p. 1384.)  Further, the trial court awarded attorney fees to

_____

[5]     We recognize that the first cause of action is styled as a petition for a writ of mandate, and that therefore the proper term for a party named in such a petition is "respondent" rather than "defendant."  We note, however, that the anti-SLAPP statute specifically states that all references to the term "defendant" in section 425.16 includes the term "respondent" (§ 425.16, subd. (h) ["For purposes of this section, 'complaint' includes 'cross-complaint' and 'petition,' 'plaintiff' includes 'cross-complainant' and 'petitioner,' and 'defendant' includes 'cross-defendant' and 'respondent.' "].)  Significantly, although ECCHO contends that it should have been named as a real party in interest in the first cause of action, the anti-SLAPP statute expressly includes *respondents*, but not *real parties in interest*, within the scope of the parties referred to as "defendants" entitled to bring a special motion to strike.

10

the plaintiff on the ground that Mercury's anti-SLAPP motion was frivolous. (*Id*. at p. 1385.)

On appeal from the attorney fee award, the Court of Appeal in *Garamendi* agreed that the anti-SLAPP motion was frivolous. As it explained, "Section 425.16 provides a remedy with respect to '[a] cause of action *against* a person *arising from* any act of that person in furtherance of a person's right of petition or free speech . . . .' (§ 425.16, subd. (b)(1), italics added.) Petitioners did not name Mercury as a defendant in the complaint, nor did they seek any relief against Mercury in the complaint. Therefore, Mercury did not satisfy the requirement of showing the action was brought against it." (*Garamendi*, *supra*, 132 Cal.App.4th at p. 1392.) Further, the court "reject[ed] Mercury's claim that its status as an intervener on the side of the defense placed it in the shoes of a defendant and as such gave it the same right to bring an anti-SLAPP motion as a defendant. The complaint in intervention did not transform Mercury into a defendant. . . . Mercury . . . could not intervene to make itself a self-styled 'defendant' for purposes of an anti-SLAPP motion when it was not a defendant to the complaint and the complaint did not purport to assert any claim against it." (*Ibid*., citation omitted.)

Here, similar to Mercury's status as an intervener in the *Garamendi* lawsuit, there is no dispute that as a proponent of the challenged Initiative, ECCHO had standing to participate in the litigation of the first cause of action, which sought to prevent the City from taking action on the Initiative. (*Perry*, *supra*, 52 Cal.4th 1116.) However, as in *Garamendi*, the fact that ECCHO had a right to participate in the litigation of the first cause of action to defend the Initiative does not mean that it had standing to bring an anti-

11

SLAPP motion as to that cause of action.  The anti-SLAPP statute expressly authorizes only parties sued in a cause of action to bring a special motion to strike.  (§ 425.16, subd. (b)(1).)  We accordingly conclude that the trial court properly denied the special motion to strike as to the first cause of action because ECCHO was not sued in that cause of action.

C.      *The Special Motion to Strike Was Properly Denied as to the Third Cause of Action*

The remaining issue is whether the trial court erred in denying the special motion to strike as to the third cause of action.

On our de novo review, we first examine whether ECCHO met its burden on the first prong of the anti-SLAPP analysis, which is to make " 'a threshold showing that the challenged cause of action is one arising from protected activity.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278.)[6]

---

[6]      ECCHO has taken the position that we should not review the trial court's ruling in its favor on the first prong of the anti-SLAPP analysis because the "Developer has not challenged that finding by way of a cross-appeal," and "it is therefore final."  ECCHO's position lacks merit.  An appeal may be taken from "*an order* granting or denying a special motion to strike."  (§ 904.1, subd. (a)(13), italics added.)  A trial court's decision on the first prong in the anti-SLAPP analysis is not an *order*, it is a *threshold ruling* preliminary to the order itself.  (*Oasis West*, *supra*, 51 Cal.4th at pp. 819-820 [meeting the first prong on an anti-SLAPP motion is " 'a threshold showing,' " and " '[o]nly a cause of action that satisfies *both* prongs of the anti-SLAPP statute . . . is a SLAPP, subject to being stricken' "].)  Here, although ECCHO made a threshold showing on the first prong, the Developer was the prevailing party in the order ruling on the anti-SLAPP motion.  As only an *aggrieved* party may appeal (§ 902), the Developer had no basis to file a cross-appeal from the ruling on the anti-SLAPP motion.  Moreover, ECCHO's argument fails to acknowledge that when an order ruling on an anti-SLAPP motion is appealed, we review the trial court's ruling on a de novo basis as to *both* of the prongs of the anti-SLAPP analysis.  (*South Sutter*, *supra*, 193 Cal.App.4th at p. 657.)  On our de novo review, "[i]f the trial court's decision denying an anti-SLAPP motion is correct on any theory

As we have explained, the anti-SLAPP statute protects against causes of action "against a person arising from any act of that person in furtherance of the person's right of petition or free speech." (§ 425.16 (b)(1).) ECCHO contends that the third cause of action falls under the protection of the anti-SLAPP statute because the cause of action arises from the exercise of its right to petition. There is no dispute that the act of circulating and seeking to enact a citizen initiative is protected petitioning activity covered by the anti-SLAPP statute. (*Mission Springs Water Dist. v. Verjil* (2013) 218 Cal.App.4th 892, 907 (*Verjil*).) "Advocacy for an Initiative and adoption of the measure are, without question, a fundamental exercise of the First Amendment right to petition." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 73 (*Stewart*).) However, the issue in dispute is whether the third cause of action *arises from* ECCHO's exercise of its right to petition for the enactment of the Initiative.

We turn to the general case law interpreting the first prong of the anti-SLAPP statute to determine whether the third cause of action arose from protected activity.

"[T]he statutory phrase 'cause of action . . . arising from' means . . . that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Cotati*, *supra*, 29 Cal.4th at p. 78.) "[T]he mere fact an action was filed *after* protected activity took place does not mean it *arose from* that activity." (*Id*. at pp. 76-77, some italics added.) " 'In the anti-SLAPP

applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion." (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307.)

13

context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.)

Here, the third cause of action is not based on any activity by ECCHO in furtherance of its right to petition to get the Initiative enacted into law. The third cause of action is limited to seeking a declaration that the City would be required to compensate the Developer under the takings clauses of the federal and state Constitutions (U.S. Const., art. V; Cal. Const., art. I, § 19) *after* the Initiative is eventually enacted into law. The third cause of action thus assumes, for its purposes, that ECCHO has been fully able to take advantage of its right to petition and has succeeded in enacting the Initiative into law. Further, unlike the first and second causes of action, the third cause of action does not seek to prevent the enactment of the Initiative. Because the third cause of action does not attempt to interfere with ECCHO's right to petition for the enactment of the Initiative, it does not arise from activity protected by the anti-SLAPP statute.

As ECCHO points out, case law recognizes that a cause of action for declaratory relief against an initiative's proponents, and which "*seeks to keep an initiative off the ballot*, . . . arises out of the proponent's right of petition." (*Verjil*, *supra*, 218 Cal.App.4th at p. 907, italics added; see also *Stewart*, *supra*, 126 Cal.App.4th at pp. 74-75 [where a cross-complaint by a municipality against proponents of an initiative sought a declaration that the municipality was not required to certify the initiative because it was purportedly illegal, the cross-complaint fell within the protection of the anti-SLAPP statute].) However, as we have noted, the third cause of action did not seek to keep the Initiative

14

off the ballot or otherwise seek an order preventing the City from taking action on the Initiative. Instead, the third cause of action merely seeks a declaration that *after* the Initiative is enacted the City will be required to pay just compensation to the Developer for taking its property pursuant to the federal and state takings clauses. Therefore, the holdings of *Verjil* and *Stewart* do not apply here because the third cause of action does not seek to prevent the Initiative from being enacted into law as part of ECCHO's petitioning activity.

As ECCHO failed to meet its burden to establish that the third cause of action arose from activity protected under the anti-SLAPP law, the special motion to strike was properly denied as to that cause of action.[7]

## DISPOSITION

The order denying ECCHO's special motion to strike is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

---

[7] Because we conclude that ECCHO did not meet its burden on the first prong of the anti-SLAPP analysis, we need not and do not examine whether the Developer established a probability of prevailing. (*Zucchet*, *supra*, 229 Cal.App.4th at p. 1476.)

15