Filed 12/24/24  Lingenfelter v. Kalinina CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL JAMES LINGENFELTER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANASTASIA KALININA et al.,<br><br>Defendants and Appellants. | D083208<br><br><br><br>(Super. Ct. No. 37-2022-00022798-CU-DF-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed.

Menhennet Law and Janine R. Menhennet for Defendants and Appellants.

Michael James Lingenfelter, in pro. per., for Plaintiff and Respondent.

Defendants Anastasia Kalinina (Kalinina), 4354 Sandy Springs Dr. LLC (Sandy Springs), and 2850 Copeland Road LLC (Copeland Road) (collectively, Defendants) appeal from an order denying their special motion to strike (anti-SLAPP motion) the first amended complaint (FAC) of

plaintiff Michael James Lingenfelter pursuant to Code of Civil Procedure section 425.16,[1] also known as the anti-SLAPP[2] statute. The trial court ruled the Defendants did not meet their "burden to demonstrate that each factual basis" for Lingenfelter's claims alleged in the FAC arose from protected activity, since Defendants instead relied on the "conclusory statement that *all* of the alleged conduct" in the FAC was protected, an assertion the court rejected. (Italics added.)

On appeal, Defendants contend we should treat Lingenfelter's FAC as "one giant accusation" because of how he, as a pro se litigant, pleaded his six causes of action. Defendants now argue, "because at least *some* of the statements [in the FAC] are protected, the entire amended complaint must be subsumed under the anti-SLAPP statute" to prevent Lingenfelter from undermining the purpose of the statute by combining allegations of protected and unprotected activity in a single cause of action. (Italics added.)

As we explain, we independently conclude Lingenfelter's FAC included one or more " ' "mixed cause[s] of action" '—that is, a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some which do not." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).) It was therefore Defendants' burden, not Lingenfelter's, the trial court's, or our burden, to identify in their anti-SLAPP motion the specific acts or conduct alleged in the FAC that they assert were protected. (See *ibid.*) Because they failed to do so, we affirm the order denying their anti-SLAPP motion.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

[2] SLAPP stands for strategic lawsuit against public participation. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2.)

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prelude to the Anti-SLAPP Motion*

Lingenfelter's original complaint alleged causes of action against Kalinina and defendant Kay Investments LLC (Kay) for defamation, slander, libel, malice, perjury, and fraud. Lingenfelter did not state the specific facts supporting the elements in each cause of action. Instead, he merely listed the causes of action, the damages he allegedly sustained, and the "evidence" in support of his claims. Lingenfelter attached more than 100 pages of documents to his complaint in support of the causes of action.

Kalinina alone[3] demurred to the complaint on the grounds it was "uncertain, ambiguous, and unintelligible"; and was legally insufficient even if all the facts alleged in the complaint were true. Lingenfelter filed a two-page opposition to the demurrer. He (1) stated that his complaint included allegations disproving Kalinina's false claims against him for "rape, drugging, abuse, felony data theft, financial malfeasance, and a host of other false accusations and complaints"; and (2) asserted that she made these claims to "multiple courts, police departments, [a] small claims court, civil courts, criminal courts, the FBI, the Department of Real Estate . . . , [his] past employer . . . , [and his] past Landlords, friends, family and business associates," among other "people and entities."

---

[3] Although Kay was named as a defendant, Kalinina stated in her points and authorities in support of the demurrer that Lingenfelter had not served Kay with the summons and complaint.

B. *Allegations in the FAC*

Prior to the hearing on the demurrer, Lingenfelter filed his FAC, the operative pleading in this case. The FAC asserted the same six causes of action from the original complaint, added Sandy Springs and Copeland Road as defendants, incorporated by reference the 100-plus pages of documents attached to his original complaint, and added about 30 more pages of documents.

Lingenfelter's FAC alleged the "[e]vidence" would "prove" that Defendants committed the following acts to harm his reputation: (1) filing (i) "false allegations" with "government agencies" accusing him of "banking theft," (ii) myriad "false police reports," and (iii) two "retaliatory" restraining orders in response to his own request for a restraining order against Kalinina; (2) causing "malicious and false allegations" to be "entered into court record[s]"; and (3) claiming he was married to Kalinina in a case pending in "Florida: Seminole County Case #2022-CA-766."

Lingenfelter further alleged Kalinina had contacted his elderly landlords and informed them he was a "drug abuser" and "rapist." He also alleged Kalinina contacted his former employer (Bank of England) and accused him of "felony theft of data from the bank," and being "fired" for "unprofessional behavior."

As before, Lingenfelter did not include any elements or allegations specific to any of his causes of action. He sought compensatory damages of $734,000 and punitive damages.

4

## C. *The Anti-SLAPP Motion*

Rather than demur[4] to the FAC, Kalinina filed the anti-SLAPP motion.[5]  She argued the "sole basis of the FAC, and all of the allegations and claims made therein are based upon claims and statements Kalinina made in judicial proceedings."  She supported her argument by summarizing the FAC with six cherry-picked quotations, as follows:

- Evidence will prove the Defendants have committed perjury many times in court.

- Evidence will prove how these allegations of banking theft and complaints Defendants filed with government agencies have harmed Plaintiff's professional reputation . . .

- Evidence will prove that these malicious and false allegations which the Defendants have entered into court record under oath . . .

- Evidence will prove that Defendant's filed false police reports to cause further harm to the Plaintiff.

---

[4]    Kalinina argued the FAC did not allege "any causes of action" because of how Lingenfelter pleaded, or failed to plead, his various causes of action. She claimed his pleadings were a "mess," as they did not "contain any numbered paragraphs, identify the individual defendants, or make any attempt to allege facts specific to any cause of action."  Despite what she claims were the various shortcomings of Lingenfelter's pleadings, she argued it was undisputed that the "entirety" of the FAC was based on constitutionally protected speech within subdivision (e)(1) and (2) of section 425.16.

[5]    Sandy Springs and Copeland Road joined Kalinina's anti-SLAPP motion, although they claimed they had not been served with the FAC. However, by joining in the motion they waived or "cured" any defect in service.  (See § 1014 [providing in part:  "A defendant appears in an action when the defendant answers, demurs, *files a notice of motion to strike*" (italics added)]; § 410.50, subd. (a) ["A general appearance by a party is equivalent to personal service of summons on such party"].)

- Evidence will prove that the Defendants . . . filed a retaliatory restraining order against the Plaintiff.

- Evidence will prove that Defendants filed retaliatory restraining order against plaintiff . . . (Footnotes and boldface omitted.)

In her declaration in support of the anti-SLAPP motion, Kalinina stated she met Lingenfelter online in March 2020. About a month later, they went to Idyllwild together where she claimed he spiked her drink and "raped" her while she was unconscious. However, they remained in an "on again, off again" relationship until December 2021, when she filed a small claims action against him.

Kalinina further declared that in February 2022, Lingenfelter sought a restraining order against her that a judge denied. Lingenfelter also contacted her ex-husband and claimed she used drugs and abused her child and reported her to child protective services. In April 2022, Kalinina filed her own restraining order against Lingenfelter, which she claimed the court granted. She also claimed the district attorney subsequently prosecuted Lingenfelter for violation of the restraining order, and his guilty plea led to the issuance of a criminal restraining order against him.

Kalinina also argued Lingenfelter could not establish a reasonable probability of success on any of his causes of action in step two of the anti-SLAPP analysis based on the litigation privilege. (Civ. Code, § 47, subd. (b).)

Lingenfelter opposed the anti-SLAPP motion. Relevant here, he argued the FAC did not include any cause of action arising from an act in furtherance of the Defendants' right of petition or free speech because those rights did "not extend to perjury and filing false police reports." In support of

6

his defamation causes of action, he also argued that Defendants "disseminated malicious false allegations of 'drugs and rape' to numerous people ([Kalinina's] ex-husband, Plaintiff's landlords, Plaintiff's ex-employer, etc.) while NOT in a courtroom environment."

D. *The Trial Court's Ruling*

Relying on *Bonni*, *supra*, 11 Cal.5th 995, the trial court found Defendants failed to separately analyze "[e]ach factual basis for a claim" made in the FAC, instead relying on their "conclusory statement that all of the alleged conduct" in the FAC arose out of "court proceedings." However, the court disagreed with Defendants on that point, ruling Lingenfelter made allegations in the FAC supporting his claims that did not involve judicial proceedings. The court therefore denied Defendants' anti-SLAPP motion.

## DISCUSSION

Defendants on appeal contend Lingenfelter's FAC was not a "cognizable pleading," as it allegedly failed to include any viable cause of action, "merely attached more than 100 pages of emails, photographs, letters, and other documents," and read "exactly like an opening statement" when it states in "every single sentence" that " 'the evidence will show.' "[6] Defendants therefore contend that the entire FAC "must be treated as one giant accusation, and because at least *some* of the statements are protected, the

---

[6] "Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis." (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388.) Reviewing the pleadings and declarations, our task on a step-one analysis under section 425.16 is to "determine what conduct is actually being challenged, not . . . whether the conduct is actionable." (*Coretronic*, at p. 1389.)

entire amended complaint must be subsumed under the anti-SLAPP statute." (Italics added.) We disagree.

A. *Anti-SLAPP Law and the Standard of Review*

"[A] special motion to strike under section 425.16 involves a two-step process. First, the moving defendant must make a prima facie showing 'that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or the California Constitution in connection with a public issue." ' " (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 420; § 425.16, subd. (b)(1).) Second, if the defendant carries this burden, the burden then shifts to the plaintiff to establish a probability it will prevail on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) The plaintiff must demonstrate the claim has at least " 'minimal merit' " in order to proceed. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385 (*Baral*).)

As relevant here, an " 'act in furtherance of a person's right of petition or free speech . . .' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1), (2).)

Our Supreme Court in *Bonni* recently discussed the "mechanics" of anti-SLAPP review. (*Bonni, supra*, 11 Cal.5th at p. 1009.) Similar to Defendants anti-SLAPP motion in the instant case, the defendant hospitals in *Bonni* sought to strike the plaintiff doctor's retaliation cause of action "in its entirety." (*Ibid.*) "But that singular cause of action allege[d] multiple factual bases; the operative complaint contain[ed] a nonexhaustive list of at

8

least 19 distinct acts or courses of conduct allegedly undertaken in retaliation for [the doctor's] complaints of unsafe conditions." (*Ibid.*) The doctor argued, much like Defendants in the instant case, that when an anti-SLAPP motion is directed at an entire cause of action—or, as described here, "one giant accusation," "a court should not examine the underlying acts individually, but instead should identify the 'gravamen' or 'principal thrust' of the cause of action and consider only whether that gravamen arises from protected activity." (*Id.* at pp. 1009–1010.) The *Bonni* court rejected that approach, concluding it was contrary to its decision in *Baral, supra*, 1 Cal.5th 376. (*Id.* at pp. 1010–1011.)

Our Supreme Court in *Baral* analyzed how a trial court should proceed when a plaintiff pleads a " 'mixed cause of action,' " a term "frequently used to designate a count alleging both protected and unprotected activity." (*Baral, supra*, 1 Cal.5th at p. 382.) *Baral* considered and disapproved of a line of cases that held an anti-SLAPP motion "lies *only* to strike an entire count as pleaded in the compliant." (*Ibid.*) The court noted that rule produced "anomalous results" when applied to a mixed cause of action because a plaintiff could frustrate the purposes of the anti-SLAPP statute by "combining allegations of protected and unprotected activity under the label of 'one cause of action.' " (*Id.* at p. 387.)

*Baral* then summarized the "showings and findings required" under the anti-SLAPP statute for the "benefit of the litigants and courts involved in this sometimes difficult area of pretrial procedure": "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is

9

sought based on allegations arising from activity protected by the statute, the second step is reached.  There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.  The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  Allegations of protected activity supporting the stricken claim are eliminated from the complaint unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral*, *supra*, 1 Cal.5th at p. 396.)

In commenting on *Baral*, the *Bonni* court reaffirmed that "[a]nalysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit.  Instead, courts should analyze *each* claim for relief—*each act or set of acts* supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, *supra*, 11 Cal.5th at p. 1010, italics added.)

*Bonni* thus rejected the plaintiff doctor's "gravamen approach," noting that approach "would again risk saddling courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims. . . . Striking a cause of action that rests in part on unprotected activity constrains a plaintiff's ability to seek relief without advancing the anti-SLAPP's goals of shielding protected activity, which would have been fully served by striking from the complaint only the allegations of protected activity.  Conversely, refusing to strike any part of a cause of action that rests in part on protected activity defeats the

10

legislative goal of protecting defendants from meritless claims based on such conduct. Plaintiffs do, of course, have considerable discretion in how to shape their pleadings, and . . . there is nothing to stop them from 'deliberately or innocently' pleading causes of action that 'allege both protected and unprotected activity.' [Citation.] But at the end of the day, we do not believe the Legislature in enacting the anti-SLAPP statute intended to make the protections of the anti-SLAPP law turn on a plaintiff's pleading choices." (*Bonni*, *supra*, 11 Cal.5th at p. 1011, citations omitted quoting *Baral*, *supra*, 1 Cal.5th at p. 393.) The court concluded that the hospitals were entitled to strike some of the doctor's retaliation claims, but were not entitled to "wholesale dismissal of these claims under the anti-SLAPP law." (*Bonni*, at p. 1004.)

We review an order denying an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) We consider the parties' "pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); accord, *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 94.)

B. *Analysis*

In their anti-SLAPP motion, Defendants argued the trial court should strike the entire FAC because all the claims and allegations therein were based on protected activity, including (1) statements and documents Kalinina filed in court and (2) her filing of what Lingenfelter alleged was a false police report. Because Defendants took an all-or-nothing approach in their anti-SLAPP motion, they chose not to identify specific allegations in the FAC they claim involved protected activity. Instead, they merely summarized the petitioning activity in six bullet points, as noted *ante*.

11

Defendants, however, have changed their position on appeal. Citing this court's decision in *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, they now ask us to apply the gravamen test, otherwise known as the "*Mann* rule" based on our later decision in *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90. As a matter of first impression, *Mann* held that "where a defendant has shown that a substantial part of a cause of action constitutes speech or petitioning activity protected by the anti-SLAPP . . . statute [citation], . . . the plaintiff need only show a probability of prevailing on *any part of its claim*." (*Id.* at p. 100.)

There are three problems with Defendants' argument.

First, they did not raise this issue in the trial court, instead claiming the entire FAC was subject to the anti-SLAPP statute. (See *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 (*Franz*) [appellate courts generally will not consider matters presented for the first time on appeal]; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381 [failure to raise issue in trial court waives or forfeits issue on appeal].)

Second, our Supreme Court expressly disapproved of the *Mann* rule/gravamen approach for mixed causes of action when it decided *Baral* in 2016, as it recently confirmed in *Bonni*. (*Bonni, supra*, 11 Cal.5th at p. 1010; *Baral, supra*, 1 Cal.5th at p. 396, fn. 11.) Defendants did not cite to either Supreme Court case in their anti-SLAPP motion or in briefs submitted to our court.

Third, because Defendants did not follow *Baral* and *Bonni* and identify which specific "act or set of acts" or conduct in the FAC was subject to the anti-SLAPP statute (*Bonni, supra*, 11 Cal.5th at p. 1010; *Baral, supra*, 1 Cal.5th at p. 396), on appeal we decline to address their contention that at

12

least *some* of the allegations in the FAC are protected. The decision in *Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63 (*Young*) provides useful guidance.

In *Young*, the debt collector defendants sought to strike the entire complaint of the consumer plaintiff, which included a cause of action based on the Rosenthal Fair Debt Collection Practices Act. (*Young, supra,* 91 Cal.App.5th at p. 72.) The defendants in the alternative made a general request for a "narrower form of relief in [their] notice of motion or in the [anti-SLAPP] motion itself," seeking to strike specific allegations in what the defendants referred to as plaintiff's " 'derivative claims' " that were included in her Rosenthal cause of action.[7] (*Ibid.*)

On appeal, the defendants claimed that, even if the court concluded that the plaintiff had satisfied her minimal burden to allow her Rosenthal cause of action to continue, the court was still required to address the allegations in the derivative claims and determine whether they too should be allowed to proceed. (*Young, supra,* 91 Cal.App.5th at p. 106.) In rejecting this argument, the *Young* court noted that the defendants' motion "failed to dissect each of the . . . legal theories presented, element-by-element, so that Young was on notice of exactly what elements of which legal theories the [defendants] claimed were based on protected conduct and lacked minimal merit." (*Id.* at p. 97.) *Young* added that, to the extent the defendants' anti-SLAPP motion "[s]ummarized generally" the factual allegations in the derivate claims—not unlike the six bullet points at issue in our case, it could "surmise" how those allegations "probably align, element-by-element, with

---

7      The plaintiff's " 'derivative claims' " were comprised of (1) a series of five, one-sentence subparagraphs and (2) three federal statutes in various footnotes, all of which were additional bases to support the plaintiff's Rosenthal cause of action. (*Young, supra,* 91 Cal.App.5th at pp. 95–96.)

the legal theories Young is pursuing," but that it had "no obligation to do so on appeal." (*Id.* at pp. 97–98.)

*Young* continued, "For a court to analyze a *Baral*-style motion to strike properly, the moving party must address the issue specifically—in the trial court, and on appeal. Thus, whether we describe what we have here as a failure to meet the initial first-step burden or a forfeiture on appeal, the problem for the [defendants] in asking that we order Young's 'derivative claims' to be stricken under *Baral* is that, procedurally, the request has not been properly framed for us at this stage of the proceedings." (*Young, supra,* 91 Cal.App.5th at p. 100.)

*Young* suggested a procedure to ensure a moving party filing an anti-SLAPP motion properly frames a challenge to a mixed cause of action and, if an appeal is pursued, to preserving such challenge for review: "[W]e take this opportunity to suggest that any litigant seeking . . . allegation-by-allegation relief should (1) make clear in its notice of motion that it seeks an order striking discrete allegations within a cause of action or within causes of action, and (2) set forth plainly and concisely in its moving papers exactly what factual allegations it wishes to have stricken, in a table or chart showing exactly how each such allegation aligns with elements of the cause of action or causes of action the motion attacks. (Cf. Code Civ. Proc., § 437c, subd. (b)(2)–(3) [requirement of separate statements of undisputed and disputed facts in summary judgment procedure].) That will not only allow a determination to be made about whether the movant has borne its initial burden of proof, but will place the nonmoving party on notice of what aspects of its pleading are being attacked." (*Young, supra,* 91 Cal.App.5th at p. 100, fn. 15.) Because the defendants sought to strike the entire complaint and "failed to bear their initial burden of framing an element-by-element

14

anti-SLAPP attack on [the plaintiff's] 'derivative claims' and preserving that attack on appeal," the *Young* court refused to address those claims on appeal. (*Id.* at p. 99.)

Turning to the instant case, like the defendants in *Young* who sought to strike the plaintiff's entire complaint, Defendants here sought to strike Lingenfelter's entire FAC, claiming all of its allegations fell within the anti-SLAPP statute. Defendants therefore did not identify in their moving papers the protected acts or conduct that it sought to strike, instead merely summarizing the FAC with six bullet points. When that argument failed in the trial court, Defendants modified their position on appeal, claiming that Lingenfelter's "one giant accusation" contains "some" allegations of protected conduct.

After *Baral* the *Mann* rule/gravamen test is no longer the law in California. And because Defendants in their anti-SLAPP motion did not specify which allegations in the FAC are constitutionally protected, like the *Young* court, we decline on appeal to undertake a *Baral*-style analysis to the FAC even if it appears that some of the allegations in the complaint may be subject to the anti-SLAPP statute. (*Young, supra*, 91 Cal.App.5th at p. 100 [procedurally, a moving party must "properly frame[]" in its moving papers a *Baral*-type challenge to specific allegations in a complaint].)

Defendants alternately contend that the trial court erred when it found Kalinina's statements to Lingenfelter's landlords did not involve protected speech. In support of this position, Defendants argue Lingenfelter *already* sued his landlords when he sued Kalinina, listing the register of actions from three 2022 cases. Defendants, however, never raised this issue in their anti-SLAPP motion. (See *Franz, supra*, 31 Cal.3d at p. 143; accord, *In re N.R.* (2017) 15 Cal.App.5th 590, 598 [where an argument "involves an issue of fact

15

rather than a pure question of law," it is "forfeited by appellant's failure to raise it below"].)  And, to the extent they made this argument at the anti-SLAPP hearing, we have no record of it because the hearing was unreported.  (See *Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 633, fn. 12 ["When there is no reporter's transcript and no error is evident from the face of the appellate record, we presume . . . [the] absence of error."].)  We also note Kalinina neither mentioned the three cases in her declaration in support of the anti-SLAPP motion, nor did she mention Lingenfelter allegedly sued his landlords before she made these statements to them, or before he sued, or contemplated suing, her.

In addition, although Defendants' have requested judicial notice of exhibits showing Lingenfelter was subject to a domestic violence restraining order in favor of Kalinina, and was fined, booked, and released for violating that order following a guilty plea, that request did *not* include any documents pertaining to the three cases purportedly involving Lingenfelter's former landlords.  (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102, fn. 3 ["Factual matters that are not part of the record will not be considered on appeal and should not be referred to in the briefs."].)[8]

Moreover, from our independent review of the FAC, we conclude the statements attributable to Kalinina when she contacted Lingenfelter's former employer and accused him of engaging in fraudulent and unethical conduct in the workplace, also do not appear to involve protected activity.  We note

---

[8]  We now deny the Defendants' request for judicial notice of these documents, as we conclude none are relevant to our decision.  (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials that are not "necessary, helpful, or relevant"].)  For the same reason, we also deny Lingenfelter's request for judicial notice of an e-mail he sent to Defendants' counsel.

Kalinina's declaration did not address these statements, including her contention that Lingenfelter already sued, or was contemplating suing, his former employer when Kalinina purportedly made these statements about Lingenfelter.

Finally, we reject Defendants' contention that the entire FAC should be struck because "every single document attached as an exhibit [to the FAC] was created in connection with actually pending litigation, whether to Plaintiff's former landlord whom he [allegedly] was suing, or Plaintiff's former employer whom he was also [allegedly] suing, or to the [t]rial [c]ourt." (Italics omitted.) First, as we already found, Defendants did not proffer evidence that Kalinina's statements to Lingenfelter's former landlords that he drugged and raped her, or her statements to Lingenfelter's former employer about his alleged unethical behavior, were made in a judicial proceeding or in connection with an issue under consideration by a judicial body. (See § 425.16, subd. (e)(1), (2).)

Second, the fact the documents themselves may have been prepared in connection with a judicial proceeding does not make the *contents* of those documents subject to protection. If that were the rule, any document prepared in a judicial proceeding, or in connection with an issue under consideration by a judicial body, would be protected under the statute, which is clearly not the law.

In sum, we conclude Defendants did not satisfy their burden under the first step of the anti-SLAPP statute (1) to establish the entire FAC was protected, or (2) to identify in the proper procedural format each allegation they now claim is protected, after admitting on appeal that only some of the allegations in the FAC fall within section 425.16. (See *Bonni, supra,* 11 Cal.5th at p. 1010 ["If a cause of action contains multiple claims and a

moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims."]; *Young*, *supra*, 91 Cal.App.5th at p. 100 ["A concession that protected conduct is involved in the context of a motion to strike the entire complaint tells us nothing about whether there is a dispute on that issue when it comes to individual allegations."].)  Based on our conclusion, we deem it unnecessary to decide whether Lingenfelter's satisfied his burden under step two of the anti-SLAPP analysis to establish "a probability of success" on his claims.  (See *Baral*, *supra*, 1 Cal.5th at pp. 384–385.)

## DISPOSITION

The order denying Defendants' anti-SLAPP motion is affirmed. Lingenfelter to recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

RUBIN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

18